KIRA M. RUBEL [CALIF. STATE BAR NO. 253970]
**LAW OFFICE OF KIRA M. RUBEL**
krubel@kmrlawfirm.com
3615 Harborview Drive, Suite C
Gig Harbor, WA 98332-2129
Telephone: (800) 836-6531
Facsimile: (206)-238-1694

*Attorney for Plaintiff*
STEVEN WATERBURY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN WATERBURY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ASCENDANT MARKETING GROUP, LLC, and Does 1 through 10, inclusive;<br><br>Defendant. | CASE NO. **'19CV0741 MMAWVG**<br><br>Complaint for Damages and Injunctive Relief *for claims arising under* The Telephone Consumer Protection Act, 47 U.S.C § 227<br><br>**Jury Trial Demanded** |

### Introduction

1. This is a lawsuit against Defendant ASCENDANT MARKETING GROUP, LLC ("Defendant" or "AMG") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") arising out of Defendant's illegal telemarketing campaign. Specifically, between October 2017 and October 2018, Plaintiff STEVEN WATERBURY ("Plaintiff") received no less than 19 telemarketing calls to his residential telephone from Defendant and/or on Defendant's behalf.

1

COMPLAINT
CASE NO.:_____

Defendant made these calls to generate leads for Loan Depot, Inc. (who may also be a relevant Defendant to this lawsuit) in an effort to sell mortgage refinancing. In doing so, AMG very clearly violated the TCPA since it made telemarketing calls to Plaintiff's number which has been on the national Do-Not-Call list since 2003. Plaintiff never otherwise gave consent to AMG to receive such calls and revoked any perceived consent on multiple occasions. There can be no doubt as to Defendant's liability here.

2. Plaintiff brings this lawsuit for the maximum in statutory damages, injunctive relief, and any other available legal or equitable remedies arising out of the illegal actions of Defendant.

3. Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his counsel.

## Parties, Jurisdiction and Venue

4. Plaintiff Steven Waterbury is, and at all times mentioned herein was a citizen and resident of the State of California who resides in San Diego, California.

5. Defendant sells, vis a vis its telemarketing calls, mortgage refinancing services, generating leads to then refer to mortgage lenders like Loan Depot, Inc., and, on information and belief, collects a fee from the lender to generate these leads. Defendant is, and at all times mentioned herein was, a company founded under the laws of the State of California, whose primary corporate offices are located at 3456 Camino del Rio N. Suite 101, San Diego, California 92108. Therefore, at all times relevant herein Defendant conducted business in the State of California and in the County of San Diego, and within this judicial district by telemarketing to Plaintiff by making telemarketing calls to a number that (a) was placed on the Do-Not-Call list, (b) for which there was no other prior express consent to receive telemarketing calls, and who (c) specifically revoked any perceived consent.

6. Jurisdiction is proper under 28 U.S.C. § 1331 as the case involves a cause

2

COMPLAINT
CASE NO.:_____

of action for violations of a federal law of the United States.

7. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA) 47 U.S.C. § 227

8. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

9. 47 U.S.C. §227(c)(5) provides that any person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may bring a private action based on a violation of the TCPA, as promulgated in the Code of Federal Regulations.

10. The TCPA was established specifically in order to protect telephone subscribers' privacy rights and help them to avoid receiving unwanted telephone solicitations.[2] "Congress found that consumers consider these kinds of calls, 'regardless of their content or the initiator of the message, to be a nuisance and an invasion of privacy'[.]"[3]

11. 47 C.F.R. § 64.1200(c), provides that "No person or entity shall initiate any telephone solicitation" to " . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry ("DNC")

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq*.
[2] 47 U.S.C. § 227(b)(1)(A)(iii); See also S.Rep. No. 102-178, 1st Sess. 102nd Cong., at, 4-5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968.
[3] TCPA, Publ. L. No. 102-243, § 2, 105 Stat. 2394 (1991.)

3

COMPLAINT
CASE NO.:_____

of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

12. 47 C.F.R. § 64.1200 (e), provides that § 64.1200 (c) and (d) are applicable to any person or entity making telephone solicitations or telemarketing calls to telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'.

13. 47 C.F.R. § 64.1200(d) further provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards":

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such Request.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on

    whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

14. Defendant violated § 64.1200 (c) by initiating more than one (1) telephone solicitation to Plaintiff's residential telephone line within a 12-month period, even though he was registered on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations, which is maintained by the federal government. In fact, Defendant made *at least* 19 such calls to Plaintiff.

15. Plaintiff also *specifically* requested not to receive calls from Defendant, as set forth in § 64.1200 (d)(3).

16. Defendant clearly violated § 64.1200 (d) by initiating calls for telemarketing purposes to Plaintiff's residential telephone without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them, as is evidenced by the fact that Plaintiff repeatedly asked Defendant to stop calling, which they failed and refused to do. On four (4) separate occasions, Mr. Waterbury informed Defendant to stop calling. Defendant failed and refused to comply.

17.     Defendant also violated § 64.1200 (d) by spoofing its name and phone number which appeared on Plaintiff's caller ID on all of the calls.

18.     In addition to violations of Section (c) of the TCPA [hereinafter referred to as the "Do Not Call Provision"], Defendant also violated Section (b) of the TCPA, which generally regulates, among other things, the use of automated telephone equipment, referred to as "ATDS" or "autodialers."[4]

19.     The Federal Communications Commission ["FCC"] is the entity charged with interpreting and clarifying the TCPA.  On October 16, 2012, the FCC released a report and order which further clarified the TPCA as it pertains to telemarketers. This Order revised the TCPA to require prior express *written* consent to receive telemarketing calls, repealed the "established business relationship" exception to telemarketing calls, requiring consent be specific to each company (rather than blanket consent), and specifically *included* both autodialed and prerecorded telemarketing calls to landlines as a prohibited practice.[5]

20.     Accordingly, Plaintiff seeks to recover damages under both sections (b) and (c) of the TCPA, in what is called "stacking" these provisions. "Congress evidenced its intent that a person be able to recover for the telemarketer's failure to institute minimum procedures for maintaining a do-not-call list as well as the additional harm of the call being automated." Charvat v. NMP, LLC, 656 F.3d 440, 449 (6th Cir. 2011.)  District Courts within California have confirmed that the Sixth Circuit's logic in Charvat is sound. "[T]he court finds persuasive the Sixth Circuit's holding that 'the fact that the statute includes separate provisions for statutory damages in subsections (b) and (c) suggests that a plaintiff could recover under both.'" Roylance v. ALG Real Estate Services, Inc., 2015 U.S. Dist. LEXIS 44930 (N.D.

---

[4] 47 U.S.C. § 227(b)(1)(A)(iii).
[5] In re Rules & Regs. Implementing the TCPA of 1991, 27 FCC Rcd. 1830, 1838, (Feb. 15, 2012).

Cal. March 16, 2015); *see also* <u>Drew v. Lexington Consumer Advocacy, LLC</u>, 2016 U.S. Dist. LEXIS 52385, at *33 (N.D. Cal. Apr. 18, 2016).

### Factual Allegations

21. At all times relevant, Plaintiff was a citizen of the State of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

22. Defendant, at all times mentioned herein, was an entity that meets the definition of "person," as defined by 47 U.S.C. § 153 (39).

23. At all times relevant, Defendant conducted business in the State of California and in the County of San Diego, within this judicial district, and in fact, on Ruffin Road.

24. From October 2017 through October 2018, Plaintiff received at least 19 telemarketing calls from Defendant (and/or its agents calling on its behalf).

25. These telemarketing phone calls were the first time Plaintiff was made aware of Defendant's business or had any interaction with Defendant whatsoever. Plaintiff never gave his prior express consent to receive these unsolicited telemarketing calls from Defendant. Plaintiff has never used any services offered by Defendant and had no pre-existing relationship with Defendant. In fact, Plaintiff does not know how Defendant acquired his telephone number.

26. Plaintiff picked up many of these harassing telemarketing calls from Defendant. On the third call, Plaintiff answered the phone, heard that the caller was clearly a telemarketer and told the caller to STOP CALLING.

27. But, Defendant was undeterred and continued calling in the succeeding months.

28. During some of the calls, AMG also used the name of its "sister company" Waterfront Consulting. On at least one occasion, AMG acknowledged that Waterfront Consulting was the same as AMG.

29. Regardless of whether the caller claimed to be from "Waterfront Consulting" or AMG, all calls were from the same phone number with caller ID "B Harris".

30. Plaintiff believes that all calls were made by autodialer. This belief is based on several facts. First, at least one of the callers acknowledged he was calling from "a computer". Secondly, on more than one occasion, Plaintiff answered the phone to hear dead air. When he returned the call, it was disconnected. These are all clear signs that Defendant was using an autodialer to make these illegal phone calls to Plaintiff.

31. In total, Defendant called Mr. Waterbury at least 19 times in violation of his rights under the DNC.

32. In total, Defendant called Mr. Waterbury at least 19 times with a spoofed number.

33. In total, Plaintiff told Defendant to stop calling him four (4) times.

34. In total, on information and belief, Plaintiff was called at least 19 times by an autodialer.

35. Plaintiff believes, on information and belief and investigation by Plaintiff and counsel, that Defendant made every single one of these calls in an effort to solicit Plaintiff's business for mortgage services.

36. Defendant never obtained Plaintiff's prior express consent to receive telemarketing calls of this nature. Notwithstanding the fact that Plaintiff did not provide Defendant with his telephone number at any time, Defendant, or its agents, have called Plaintiff on his residential telephone for the purposes of telemarketing, even in spite of the fact that Plaintiff's phone number has been on the national do-not-call registry since 2003.

37. Defendant and/or its agent's acts constituted a significant and real invasion of Plaintiff's privacy. In fact, Defendant's acts interrupted meal times and time that Plaintiff intended to spend with his family. These calls were extremely harassing and caused Plaintiff tangible harm.

38. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under sections 47 U.S.C. § 227(b) and (c), is entitled to receive from $500-$1,500 in damages for each violation of subpart (b) and each violation of subpart (c) for a total of between $1,000 and $3,000 per phone call.

39. Plaintiff also alleges that Defendant's misconduct was willful and knowing and requests treble damages. Plaintiff never gave consent and specifically revoked consent on multiple occasions. The idea that Defendant's acts were not willful is preposterous since Plaintiff revoked any perceived consent on multiple occasions. Under §227(b)(3) and (c)(5), the Court can and should treble damages here, since Defendant's conduct was not only willful but undeterred by Plaintiff's protestations and even the filing of a small claims matter.

## FIRST CLAIM
### Negligent Violations of 47 U.S.C. 227
### [Against Defendant and Does 1 through 10.]

40. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

41. The foregoing acts and omissions by Defendant constitute numerous and multiple negligent violations of the TCPA, and specifically, 47 U.S.C. § 227(b)(1)(A) and (c)(5).

42. As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each violation of 47 U.S.C. § 227(c)(5) and $500.00 in statutory damages for each violation of 47 U.S.C. § 227(b)(1)(A), for a total of $1,000 per call, or $19,000 in total damages. Plaintiff reserves the right to increase this requested amount if additional illegal calls are found during discovery.

43. Plaintiff is also entitled to injunctive relief prohibiting such conduct in the future.

///

# SECOND CLAIM
## Knowing and/or Willful Violations of 47 U.S.C. 227
### [Against Defendant and Does 1 through 10.]

44. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

45. The foregoing acts and omissions of Defendant constitute numerous and multiple willful violations of the TCPA, and specifically, 47 U.S.C. §227(c)(5), and (b)(1)(A).  At all times, Defendant knew that it was telemarketing to Plaintiff in spite of his number being on the do-not-call registry and in spite of his repeated requests that Defendant stop calling.  At all times, Defendant knew its conduct was illegal, as evidenced by the spoofed caller ID, the continued calls even after Plaintiff made it very clear that Defendant had no consent to make such calls, the continued calls after Plaintiff filed a small claims matter, and the multitude of other lawsuits pending against Defendant alleging the same violations.  Treble damages are warranted here for Defendant's flagrantly abusive acts.

46. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, or $3,000 per call, for a total of $57,000.  Plaintiff reserves the right to increase this requested amount if additional illegal calls are found during discovery.

47. Plaintiff is also entitled to injunctive relief prohibiting such conduct in the future.

///

///

///

### Prayer For Relief

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

### First Cause of Action for Negligent Violations

As a result of Defendants' negligent violations of 47 U.S.C. § 227(b) and (c), Plaintiff seeks $1,000.00 (one-thousand dollars) in statutory damages, for each and every call, for a total of $19,000, as well as injunctive relief prohibiting such conduct in the future, and any other relief the Court may deem just and proper.

### Second Cause of Action for Knowing and/or Willful Violations

As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b) and (c), Plaintiff seeks treble damages, as provided by statute, of $3,000.00 (three-thousand dollars) for each and every phone call, for a total of $57,000, as well as injunctive relief prohibiting such conduct in the future, and any other relief the Court may deem just and proper.

### Trial By Jury Demanded

Pursuant to the Seventh Amendment of the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all counts so triable.

Date: April 22, 2019

**LAW OFFICES OF KIRA M. RUBEL**

_/s/ Kira M. Rubel_
By: Kira M. Rubel, Esq.
*Attorney for Plaintiff Steven Waterbury*